WEST BEND MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. FRANCES SALEMI, a/k/a Frances Solenci, *et al.*, Defendants-Appellees.

Second District No. 2—86—0636

Opinion filed July 20, 1987.

242

Claude W. Tupy and Janis M. Tupy, both of Tupy & Tupy, Ltd., of De Kalb, for appellant.

James R. Buck, of Klein, Stoddard & Buck, of Sycamore, for appellee Frances Salemi.

Ron Lev, of Ron Lev, Ltd., of Chicago, and Peter Alexander, of Alexander & Cicero, P.C., of Rockford, for appellee Antoinette Herrick.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, West Bend Mutual Insurance Company (West Bend), appeals from trial court orders which granted defendant Frances Salemi's motion for summary judgment, dismissed defendant Antoinette Herrick, and entered a damages judgment for Salemi. Plaintiff asserts on appeal that the trial court erred in (1) finding that defendant Salemi had an independent, contractual right to recovery of proceeds payable under a fire insurance policy, (2) dismissing defendant Herrick, and (3) determining Salemi's damages as a matter of law.

In September 1977 defendant Antoinette Herrick (buyer), among others, was assigned the buyer's interest in a real estate sales contract (agreement) for the purchase of property from defendant Frances Salemi (seller). The property was improved with a 12-unit motel and a separate dwelling house. A provision of the agreement required the buyers to keep the improvements insured against fire and other casualty. Accordingly, in October 1982 a policy was issued by West Bend which provided coverage only on the motel and named Herrick, d/b/a the New Star Lite Motel, as the insured. A contract of sale clause endorsement also was issued which named Salemi and insured her interest in the property.

In May 1983 the motel was partially destroyed by fire. Herrick's insurance claims were rejected by West Bend on grounds that she was suspected of arson in the fire. Herrick filed suit against West Bend in Winnebago County in July 1984 seeking a money judgment for breach of contract. That case, in which Herrick was represented by attorney Ronald Lev, was still pending at the time this appeal was filed.

Salemi also made a claim against West Bend for the amount of the unpaid balance due under the real estate agreement. In August 1984, before a decision was rendered on the claim, West Bend filed a complaint for declaration of rights in Ogle County. Herrick and Salemi were named defendants. Salemi, represented by attorney Ronald Lev, filed a motion for summary judgment, and plaintiff filed a motion for judgment on the pleadings. On August 13, 1985, after a hearing and a

series of subsequent motions, the trial court issued a letter opinion in which it found that Salemi was a coinsured under the West Bend insurance policy and, as such, her rights were independent of defendant Herrick's rights. The court granted Salemi's motion for summary judgment as to liability, denied plaintiff's motion for judgment on the pleadings, and indicated that there remained a genuine issue of material fact as to damages sustained by Salemi.

In January 1986 plaintiff filed a motion to default defendant Herrick, who, like Salemi, was represented by attorney Ronald Lev but had never filed an appearance or otherwise pleaded. The motion was denied, and counsel was given. seven days to appear or plead on behalf of Herrick. The court also denied plaintiff's concurrent motion to disqualify attorney Lev on grounds that he improperly represented both the buyer and the seller involved in the real estate sales contract. Shortly thereafter attorney Lev filed both an appearance for defendant Herrick and a motion to dismiss her from the Ogle County case on grounds that the suit pending in Winnebago County involved the same parties and the same cause.

Ultimately, the trial court disposed of all matters still pending in the following manner. Herrick was dismissed; Salemi's motion for summary judgment on the issue of damages was granted; judgment was entered for Salemi for the balance due on the real estate agreement plus delinquent real estate taxes and interest; and Salemi was ordered to assign her interest in the real estate contract to West Bend. Plaintiff's post-judgment motion was denied, and this appeal was timely filed.

■■ The trial court disposed of this matter by summary judgment. Summary judgment should be granted only when there are no genuine issues of material fact to be tried and the movant is entitled to judgment as a matter of law. (*Marquette National Bank v. Walgreen Co.* (1984), 126 Ill. App. 3d 680, 682, 467 N.E.2d 954; *Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 662, 458 N.E.2d 644.) West Bend asserts that summary judgment as to liability was improper, not because there were disputed genuine issues of material fact, but because Salemi was not entitled to judgment as a matter of law. Plaintiff refuses to recognize any direct liability to Salemi under the insurance contract. It insists that Salemi's rights, if any, are derived from those of Herrick, the named insured, and argues that it need not honor Herrick's rights because she was allegedly involved in arson which damaged the motel. West Bend concludes that since it has no liability to Herrick it certainly has no liability to Salemi, whose rights exist only by virtue of the rights of

Herrick. We do not believe plaintiff's position regarding Salemi's rights under the contract of insurance is legally supportable.

 █ As a general rule where the buyer under an instalment contract for the sale of realty agrees to insure the property against casualty loss for the benefit of the seller, the seller is entitled to the insurance proceeds to the extent of his interest in the insured property. (*International Insurance Co. v. Melrose Park National Bank* (1986), 145 Ill. App. 3d 286, 290, 495 N.E.2d 1197, 1199; *Kindred v. Boalbey* (1979), 73 Ill. App. 3d 37, 40, 391 N.E.2d 236; *White v. United States Fidelity & Guaranty Co.* (1974), 21 Ill. App. 3d 588, 594, 316 N.E.2d 131.) We find this rule to be applicable here. The real estate agreement in the case at bar states:

> "The Buyers agree to keep the improvements insured from date of possession to the date of delivery of deed with fire and extended coverage insurance in the amount of not less than $15,000.00 on the dwelling house and $100,000.00 on the motel units and the said contracts of insurance shall bear riders *with loss payable clauses to the parties hereto as their interest may appear from this agreement.*" (Emphasis added.)

The insurance policy subsequently taken out by Herrick contains a contract of sale clause endorsement which states in pertinent part:

> "A contract for sale of the property described in this policy having been made between the Insured and Mrs. Frances *** [Salemi] 163 Hickory Hill, Port Richey, FL 33568 the interest of said last named party is also insured hereunder, but without any increase in the amount of insurance, and subject to all other terms, provisions and conditions of this policy, including any Mortgage Clause forming a part of this policy."

The combination of the language in the agreement and the addition of Salemi as an insured in the contract of sale clause clearly indicate that the buyers agreed to insure the property for Salemi's benefit at least to the amount of her interest. Thus, Salemi had a right to insurance proceeds as a matter of law.

West Bend's citation of *Posner v. Firemen's Insurance Co.* (1964), 49 Ill. App. 2d 209, 199 N.E.2d 44, rather than dissuading us from our conclusion, reenforces it. Plaintiffs in *Posner* sought insurance proceeds under a simple loss payable clause which indicated loss was to be payable to the insured and the plaintiffs according to their interests. The court found that a loss payable clause, without more, would not support a claim by plaintiffs directly against the insurer. However, according to the *Posner* court, a standard mortgage clause which specifically protected a mortgagee from acts or omissions of the named

insured would support recovery directly by a mortgagee. Recovery could also be supported by language setting up a separate contractual relationship between the insurer and the third party. The court cited the following as an example of such language:

> " 'If with the consent of this company an interest under this policy shall exist in favor of a mortgage, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured, as described herein [certain conditions shall apply].' " *Posner v. Firemen's Insurance Co.* (1964), 49 Ill. App. 2d 209, 215, 199 N.E.2d 44, quoting *Crawford v. Aachen & Munich Fire Insurance Co.* (1902), 100 Ill. App. 454, 455, *aff'd* (1902), 199 Ill. 367, 65 N.E. 134.

In the absence of additional, contractual language creating an independent insurance relationship, the *Posner* court held that the plaintiffs named as payees in the loss payable clause were merely appointees of the named insured. As appointees they could receive payment due to the insured to the extent of their own interest in the property. Thus, the rights of the loss payees under a simple loss payable clause were derivative in nature and dependent upon the rights of the named insured. That is not the situation now before us.

It is our opinion that Salemi's rights in the instant case, unlike plaintiff's in *Posner*, were established by the contract of sale clause endorsement. The language of the clause indicates a recognition by West Bend that, pursuant to the contract for sale, Salemi had an interest in the motel property separate and distinct from Herrick's interest. It is also apparent that West Bend agreed that Salemi's interest "is also insured" under the insurance policy. Accordingly, through the endorsement, Salemi acquired an interest in the insurance policy with the consent of the insurer. These circumstances gave rise to an independent contractual relationship between Salemi and West Bend which is sufficient to support recovery directly by Salemi. *Posner v. Firemen's Insurance Co.* (1964), 49 Ill. App. 2d 209, 199 N.E.2d 44.

■ West Bend next contends that even if there is an independent contract between itself and Salemi, defendant's recovery is barred by another clause of the contract. Plaintiff correctly points out that the contract of sale clause expressly subjects Salemi to "all other terms, provisions and conditions" of the policy and that one of the other policy provisions states:

> "This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance."

It is West Bend's position that this provision renders the policy void

as to all insureds as a result of the wrongdoing of any insured. Accordingly, plaintiff argues that the policy is void as to Herrick because of her alleged arson involvement and thus is void also as to Salemi. We find that Illinois law does not support West Bend's position.

The issue before us was discussed in *Economy Fire & Casualty Co. v. Warren* (1979), 71 Ill. App. 3d 625, 390 N.E.2d 361. Plaintiff insurer in *Economy* sought restitution for fire insurance proceeds paid to husband and wife insureds on grounds that the wife had committed arson. The husband argued that he was innocent of wrongdoing and entitled to have the proceeds. The insurer responded that the husband and wife's interests in both the property and the insurance contract were joint and that arson by the wife voided the policy in its entirety.

In the absence of Illinois cases directly on point, the *Economy* court surveyed the law on the issue in other jurisdictions. Although it was found that some courts barred recovery to all insureds as the result of wrongdoing by one insured, the *Economy* court preferred the reasoning of those jurisdictions which allowed recovery by an innocent coinsured. The court particularly relied upon *Hoyt v. New Hampshire Fire Insurance Co.* (1942), 92 N.H. 242, 29 A.2d 121, which construed an insurance policy to allow innocent tenants in common to recovery despite the fact that they were jointly named with the wrongdoer in the insurance policies.

Following *Hoyt*, the *Economy* court relied on the principle that construction of an insurance contract turns on what a reasonable person would have understood the words of the policy to mean rather than what the insurance company intended them to mean. The court concluded that, relative to the case before it, the reasonable person in the position of the defendant husband would not have supposed that the wrongdoing of his coinsured would be imputed to him. The court added that if the insurer intended such a result, that intention should have been clearly expressed by the terms of the policy. The husband was allowed to retain one-half of the proceeds. The *Economy* rule protecting innocent coinsureds was accepted without question or comment in *Schultz v. Republic Insurance Co.* (1984), 124 Ill. App. 3d 342, 347, 464 N.E.2d 767, 771.

The *Economy* opinion does not set forth the policy clause which barred recovery by the offending insured. Therefore, we are unable to compare it to its counterpart in the instant case. Nevertheless, we think the clause invoked by West Bend is susceptible of both interpretations urged upon us. The clause itself states neither that the policy will be void as to all insureds nor that it will be void only as to the guilty insured in the event of some improper behavior. Since, as we

have already found, Salemi and Herrick had separate and independent contractual relationships with West Bend, the clause could have either meaning. In the absence of a clear statement that the policy will be void as to all insureds, we find *Economy* to be controlling on this issue.

West Bend does not dispute that Salemi is innocent of any wrongdoing. We think the reasonable person in Salemi's position would have understood that his interest in the motel was separately covered by the policy and would not have thought any wrongdoing by a contract buyer would prevent him from recovering on the policy. If West Bend intended for both buyer and seller to be barred in the event of wrongdoing by one, its intent should have been expressly and clearly stated in the terms of the policy. We conclude that any activity on the part of Herrick is irrelevant to recovery by Salemi.

West Bend seeks to discredit Salemi's reliance on cases allowing recovery by an innocent coinsured (although plaintiff fails to state which cases) by pointing out that the parties in those cases were named insureds of equal tenancy as opposed to the vendor-vendee relationship between Herrick and Salemi. We do not see how this makes a difference. In fact, it is not unreasonable to think that a contract seller, even more than a coinsured's spouse or tenant in common, would believe herself insulated from the wrongdoing of the insured buyer by a contract of sale clause which specifically recognizes her relationship to the buyer and proclaims her interest to be "also insured hereunder." West Bend's attempt to distinguish the case from cases involving equal ownership is not persuasive.

■ We turn next to West Bend's argument that Salemi waived her direct right and interest in the adjustment process through the following term of the real estate agreement:

> "In the event of damage to said improvements by insurable casualty prior to the date of delivery of deed the insurance companies' adjustment of loss shall be applied, at the election of the Buyers, either in whole or in part, to the payment of the indebtedness hereunder or the repairing of the improvements."

This clause originally stated "at the election of the Sellers." The word "Sellers" was lined out, "Buyers" was handwritten in, and the change was initialed. Plaintiff claims that this modification shows an intentional waiver of rights by Salemi and rendered Salemi's rights to insurance proceeds subordinate to, and derivative of, the contract buyer, Herrick. We disagree.

While the cited language of the real estate agreement certainly appears to leave to the buyers the decision as to how insurance pro-

ceeds are to be applied, that is all it does. It does not address in any way the respective rights of the buyer and seller to receive those proceeds. Nor does it require payment of proceeds to a specific party. On the contrary, the cited language refers only to the *application* of proceeds and assumes that the rights of the buyer and seller as insureds have already been honored. In other words, the insureds must have the proceeds before they can be applied. Thus, the agreement between Salemi and Herrick would become relevant only after West Bend's duties under the insurance contract had been discharged. The most Salemi can be said to have waived or relinquished is the right to determine the way in which the insurance money will be spent. If Salemi were to recover proceeds and apply them contrary to the wishes of the buyer, the buyer would have recourse to legal action to enforce the real estate contract. Salemi's decision to allow the buyer to decide how to spend the proceeds, however, did not constitute a waiver of her rights under the insurance contract with West Bend and in no way rendered those rights derivative of Herrick's rights.

■ The only other issue raised by plaintiff pertinent to liability is the matter of both defendants being represented by the same attorney. West Bend moved for counsel's disqualification at trial and insists on appeal that the dual representation created a conflict of interest which was prejudicial to itself. According to West Bend's argument, it was injured when counsel for defendant Salemi failed to foreclose on defendant Herrick after she defaulted on the real estate agreement and the property fell into decay and waste. Like defendants, we doubt that West Bend has standing to raise this issue. Even if it is properly raised, however, plaintiff cannot prevail. We do not perceive that disqualification was necessary on the facts of this case.

Counsel's dual representation did not constitute a conflict since Herrick's and Salemi's interests in the motel property were discrete from one another, and each defendant could recover under the insurance contract only according to her interests. Salemi's interests could extend no further than her lien on the insured property while Herrick's interest encompassed the totality of the real property itself. Thus, counsel's pursuit of the rights of Salemi did not conflict with or cause prejudice to Herrick's interest. Nor do we perceive injury to West Bend. While Salemi had the right to foreclose on Herrick pursuant to the real estate contract, she was under no obligation to do so. If West Bend placed its reliance on Salemi's pursuit of foreclosure, it did so to its peril since such reliance was totally unwarranted.

In conclusion, all of the liability issues presented to the trial court were correctly resolved in favor of Salemi. Therefore, Salemi was en-

titled to summary judgment as to liability as a matter of law. There was no trial error on this matter.

■■ Having resolved the question of the propriety of summary judgment as to liability, we now consider West Bend's contention that defendant Herrick should not have been dismissed from the case. Herrick moved for dismissal pursuant to section 2—619 (a)(3) of the Illinois Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(3)). She claimed that another action between the same parties for the same cause was pending in Winnebago County. At trial plaintiff responded that both the cause of action and the parties in Winnebago County were different from those in the Ogle County case. On appeal, West Bend argues that Herrick was a necessary and indispensable party in the case at bar. We do not find either of plaintiff's arguments sufficient to reverse the trial court on this issue.

Section 2—619(a)(3) of the Code provides that a defendant may file for dismissal on grounds that there is another action pending between the same parties for the same cause. The term "same parties" means that litigants are substantially the same, not identical. (*Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 197, 434 N.E.2d 31.) Although Herrick is the plaintiff in the Winnebago County suit and a defendant here, our review of Herrick's Winnebago complaint reveals that the objectives of both suits, as to Herrick, are the same: to resolve her right to recover under the insurance contract with West Bend. Therefore, we do not think her respective status as plaintiff or defendant changes the parties in the two suits. At the very least, the parties meet the *Catalano* requirement that they be substantially the same. Moreover, since we have decided that Salemi's rights are not dependent in any way on Herrick's rights, we do not believe the addition of Salemi as a defendant defeats the same party requirement either. In the absence of some interdependency between the two defendants, it is evident the trial court here was being asked to resolve the same questions regarding Herrick that had already been presented to the court in Winnebago County.

■■ As to plaintiff's assertion that the two suits are not for the same cause, it has been held by our supreme court that actions are for the same cause when relief is sought on substantially the same set of facts. (*Skolnick v. Martin* (1964), 32 Ill. 2d 55, 57, 203 N.E.2d 428, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562; *Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 198, 434 N.E.2d 31.) As we said in *Catalano*, "[t]he crucial inquiry is whether the two actions arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof or relief

sought materially differ between the two actions." (105 Ill. App. 3d 195, 198, 434 N.E.2d 31.) While Herrick sued West Bend in Winnebago County for breach of contract and West Bend brought the instant suit seeking a declaration of rights, comparison of the two complaints makes it plain that the two suits rose out of the same occurrence. Any differences in legal theories of recovery do not defeat the "same cause" requirement of section 2—619(a)(3).

■ ■ West Bend's contention on appeal that Herrick is a necessary and indispensable party is no more persuasive than the preceding arguments. A necessary party is one whose presence is required (1) to protect a substantial interest of the party in the matter being litigated which will be materially affected by a judgment entered in her absence; (2) to reach a decision which will protect the interests of those before the court; or (3) to enable the court to completely resolve the controversy. (Tomaso v. Plum Grove Bank (1985), 130 Ill. App. 3d 18, 26, 473 N.E.2d 588; Brumley v. Touche Ross & Co. (1984), 123 Ill. App. 3d 636, 643-44, 463 N.E.2d 195.) In the case now before us the matter actually litigated was Salemi's right to recover under the insurance policy with West Bend. Salemi's interest in the property insured, that of a contract seller, was distinct from Herrick's interest, which was that of a contract buyer. Thus, when Salemi's rights were determined, Herrick's separate interest was not affected. Her presence was not necessary to protect her interests.

It is also clear that Herrick's presence was not necessary to protect Salemi's interests or to facilitate a complete resolution of the controversy between West Bend and Salemi. Salemi's rights sprang directly from the insurance contract and were not dependent in any way on Herrick. The trial court did not err in dismissing Herrick from the case.

■ ■ All that remains is for us to review the trial court's disposition of the matter of damages. Once again, the lower court resolved the dispute between the parties by summary judgment. Salemi contends that summary judgment was proper because, as a matter of law, her damages were equal to the unpaid balance due on the real estate agreement with Herrick. She further asserts that there is no issue as to the amount of damages because the parties stipulated as to the amount still due under the agreement.

West Bend does not deny the stipulation but insists that it did not agree that the figure in the stipulation was the correct measure of damages. On the contrary, West Bend claims that, as a matter of law, the damages are not determinable by the entire balance due to Salemi from the real estate contract sale but rather must be measured by the

portion of the balance due which is attributable to the motel. Plaintiff bases its position on the fact that the property sold to Herrick is improved with both the motel and a dwelling house while the insurance policy covers only the motel. Apparently the house is covered by a separate policy. Plaintiff argues that Salemi is entitled to damages only to the extent of her insurable interest. That interest, according to West Bend, is her interest in the insured property which, in this case, is the motel alone. The difficult question posed by this fact situation is one of first impression.

As we pointed out earlier, it has been established and recognized in numerous cases that where a real estate contract buyer has insured the property for the benefit of the contract seller, the seller is entitled to insurance proceeds equal to the amount due on the contract. (*International Insurance Co. v. Melrose Park National Bank* (1986), 145 Ill. App. 3d 286, 290, 495 N.E.2d 1197, 1199; *Kindred v. Boalbey* (1979), 73 Ill. App. 3d 37, 40, 391 N.E.2d 236; *White v. United States Fidelity & Guaranty Co.* (1974), 21 Ill. App. 3d 588, 594, 316 N.E.2d 131; *Marbach v. Gnadl* (1966), 73 Ill. App. 2d 303, 219 N.E.2d 572.) None of these cases, or any of the others cited by either party, however, present the situation now before us. As we understand them, in all of the cases one insurance policy covered all of the improvements on the land. Thus, all of the security for the seller's lien, at least to the extent of improvements, was covered by the same policy, and the seller's interest was protected *under that one policy*. Here, Salemi's lienor's interest in the motel is covered by one policy while her lienor's interest in the house is covered by another policy. West Bend asserts that Salemi should recover only so far as her lien is secured by the motel itself. Thus, we cannot consider the cited cases to be automatically controlling. However, the reasoning behind the rule of the cases is helpful.

In *International Insurance Co. v. Melrose Park National Bank* (1986), 145 Ill. App. 3d 286, 290, 495 N.E.2d 1197, the court analogized the interest of a seller under an instalment agreement to that of a mortgagee and explained a mortgagee's insurable interest as follows:

> "[T]he mortgagee relies on the property only as security for the debt because, in insuring, he is insuring not the real estate but his interest or lien thereon. The risk insured against is an impairment of the mortgaged property that adversely affects the mortgagee's ability to resort to the property as a source of payment. [Citation.]"

There can be no doubt that a real estate instalment contract seller

seeks to have the property he is selling insured for the same reason a mortgagee wants the subject of the mortgage insured. The property is the seller's security and may someday have to be used to pay the debt owed to him. Any damage or destruction to the security may result in an inability to recoup that debt. We believe it is for this reason that the rule developed whereby the contract seller is entitled to insurance proceeds up to the amount of the balance owed on a contract. Only thus can he be protected from loss due to the impairment of the security. It is for this reason also that we conclude, on the facts of this case, that Salemi is entitled to the balance due on the real estate agreement with Herrick.

Examination of the real estate agreement indicates that Herrick was purchasing, first and foremost, a motel business. There were 12 units in the motel and only one dwelling house. The buyer agreed to insure the house for not less than $15,000 and the motel for not less than $100,000. In one paragraph of the agreement the sellers agreed to furnish upon request an affidavit that there were no outstanding obligations against them in connection with the operation of the motel business. Another paragraph constituted a noncompetition clause in which sellers agreed not to lease or purchase a motel business within a 15-mile radius of the subject business for a period of 10 years. It is apparent Salemi was selling a motel business. The dwelling house was incidental to the motel itself. From this fact we conclude that, as far as the improvements are concerned, the great bulk of the value of the property was in the motel. Accordingly, it was the motel building that formed the core and the essence of Salemi's security. While, as noted by West Bend, the land, the house, and the motel, taken together, constituted the entire security, the land and house were dominated by and subservient to the motel. When the motel was impaired, the entire security was impaired and so was Salemi's ability to resort to the property as a source of repayment.

As noted by West Bend, a vendor's lien under an instalment real estate contract is upon the land as well as the improvements. However, West Bend cites no cases where insurance benefits were apportioned according to the amount of the lien attaching to an improvement absent the land. We suspect there are no such cases because the land is considered an integral but subordinate part of the improvement. When the improvement is impaired the totality of the security is impaired. We perceive the same situation here relative not only to the land on which the motel sat but also to the incidental dwelling house. The land and house were integral but subordinate parts of the motel. When the motel was damaged all of the security, and thus Sa-

lemi's lien, was adversely affected. We hold that in this case, where the motel was unquestionably the fundamental security for a vendor's lien, and the other improvement on the property was merely incidental to the motel, the contract seller is, as a matter of law, entitled to insurance proceeds in an amount equal to the balance still due under the real estate agreement with the buyer. The seller is also entitled to the stipulated amount of real estate taxes and to interest since these are provided for by the agreement.

The amounts awarded by the trial court are not in dispute. The parties stipulated as to the balance due on the real estate agreement. The trial court used a slightly lower amount than that stipulated, but the court's figure is not contested by Salemi. Nor does Salemi contest the amount of interest awarded by the court, which is less than that actually called for by the agreement. Since Salemi was entitled to the balance due, unpaid real estate taxes, and interest, as a matter of law, and the amounts awarded are acceptable, the trial court correctly disposed of this issue by summary judgment.

In accord with the reasoning set forth above the judgment of the circuit court of Ogle County is affirmed in all respects.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.