ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, v. EDWARD TUCKER, SR., Special Adm'r of the Estate of Tyrone L. Tucker, Deceased, *et al.*, Defendants-Appellants (Michael Bernickus *et al.*, Defendants).

First District (2nd Division)   No. 87—3596

Opinion filed January 17, 1989.

Robert A. Clifford and Robert P. Sheridan, both of Robert A. Clifford & Associates, of Chicago (Keith A. Hebeisan, of counsel), for appellants.

Peter C. Morse, Carol Proctor, and Robert G. Black, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Allstate Insurance Company, brought this action seeking a judicial declaration that an automobile driven by defendant Michael Bernickus and involved in an accident was not an "insured auto" entitled to coverage under a liability insurance policy issued to his father, Robert C. Bernickus. The trial court granted summary judgment in favor of Allstate. Bernickus is not involved in this appeal. The appeal is brought by the estate of Tyrone L. Tucker, the decedent, and the persons injured in the accident.

On May 15, 1985, Robert C. Bernickus went to an Allstate office at the Sears Louis-Joliet Mall to inquire about automobile liability insurance for his automobiles. He had a conversation with Leo Bick, the sales agent for Allstate. Bernickus told the Allstate agent that he wanted insurance for a 1978 Oldsmobile Cutlass and a 1974 Mercury Capri. At this time, only the Oldsmobile was operational. There was a discussion regarding the immediate need for insurance of policies for both cars since the Capri was not going to be operated for some time. There is a disputed question of fact regarding when and how the Capri would be covered. However, a policy issued immediately for the 1978 Oldsmobile Cutlass. Bernickus asserts that it was represented to him that when the Capri became operational, it would be treated as an "additional vehicle" under the policy already issued. Bernickus need only report to Bick that it was in operation within 60 days of its becoming so.

The Capri became operational on June 4, 1985. Five days later, on June 9, 1985, the Capri was involved in an accident which caused injuries to the defendant-appellants herein. Allstate was promptly notified that the Capri was operational and involved in an accident. On December 9, 1985, Allstate brought this declaratory judgment action to determine that no coverage could be provided to Robert and

Michael Bernickus under its policy for the June 9, 1985, accident.

The trial court granted Allstate's motion for summary judgment. The principal issue on appeal is whether the trial court was correct when it decided that Allstate is not estopped to deny coverage under its policy on the basis of alleged misrepresentations by its agent.

The Allstate policy provides that an "insured auto" is one that is listed on the declarations page. It is undisputed that the 1974 Capri was not listed and, therefore, not covered on the basis of this test. However, the policy also provided that an "insured auto" included "(2) an additional vehicle acquired during the policy period, so long as Allstate is informed within 60 days of its purchase."

Defendants contend that Bick, Allstate's agent, led Bernickus to believe that the Capri would be treated as "an additional vehicle" once it became operational. Therefore, Bernickus believed the 1974 Capri was covered so long as Allstate was informed within 60 days that the Capri was operational. In reliance, Bernickus did not inform Allstate immediately that the Capri was functional but did so well within the 60-day period. Less than one week after the Capri became operational, Bernickus' son was involved in the accident at issue. Defendants contend that Allstate is now estopped from denying coverage.

Allstate contends that Bick's statements to Bernickus could not reasonably be construed to support defendants' theory and, therefore, the trial court properly ruled in its favor.

■■ ■ Estoppel generally refers to reliance by one party on the words or conduct of another such that the first party changes his position and suffers harm as a result. (*Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 95-96, 473 N.E.2d 548, *appeal denied* (1985), 106 Ill. 2d 554.) To establish an estoppel in an insurance policy context, an insured must show: (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based upon that reliance. *Meier v. Aetna Life & Casualty Standard Fire Insurance Co.* (1986), 149 Ill. App. 3d 932, 938, 500 N.E.2d 1096.

■ Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits on file present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 176-77, 483 N.E.2d 210, *cert. denied* (1986), 475 U.S. 1016, 89 L. Ed. 2d 313, 106 S. Ct. 1199.) In determining whether the moving party is entitled to summary judgment, a court must construe the record

strictly against the movant and liberally in favor of the opponent. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397.

Therefore, the only question before this court is whether there is a material issue of fact upon which a reasonable person could conclude that there was a representation by Allstate or its agent upon which Bernickus relied to his detriment.

Allstate contends that there is no factual issue because: (1) Bick denied telling Bernickus that the Capri would be treated as a new or additional car; and (2) Bernickus once stated that his belief that the Capri would be treated as a new car was based upon his own assumption "that that's how most insurance companies work." Allstate asserts that because both statements are consistent, there is no question of fact. Therefore, they contend summary judgment is proper.

■ However, Allstate's reliance on this one statement of Bernickus is misguided for the purpose of summary judgment. Summary judgment is a drastic method of disposing of litigation. (*Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 934, 415 N.E.2d 481.) Before a party will be entitled to the benefit of this statutory remedy, the right must be clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) It is not intended to be used as a means of weighing conflicting issues of fact. *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60, *appeal denied* (1980), 79 Ill. 2d 631.

Allstate argued, and the trial court concluded, that the belief of Bernickus that he had 60 days to add the Capri from the time it became operational was the result of his personal misunderstanding, and not attributable to Allstate's agent, Leo Bick.

On June 24, 1985, shortly after the accident, Allstate took a written statement from Leo Bick, its agent. Bick said:

> *"Mr. Bernickus did state that he had another car in the garage that was not running. After discussing this other car he decided not to add it to the policy at that time. I do recall telling him to call and add the additional car if it became operable."*
> (Emphasis added.)

Shortly thereafter, in July 1985, Allstate took a statement from Bernickus, its policyholder. Bernickus said:

> "During [Leo Bick's] taking the application the 1974 Capri was discussed. I explained the fact that the car was not running. Leo Bick asked when I expected the car to be functional. I told him I was not sure at that time. *Leo Bick then stated that I could call to add the car when it became operational and that it then would be insured as an additional car.* He did not ad-

vise me that I had to call before driving the car. \*\*\* My next conversation with Leo Bick was on June 11, 1985 when I called him at home. I informed him of Mike's accident and was calling him because I thought that was the procedure. I explained to him that it was the Capri involved. \*\*\* [Leo Bick], also, stated at that time that he did not recall discussing my children when the application was taken. At the time the application was taken the children were discussed and Mr. Bick stated the children were automatically covered because they were members of the household. (Emphasis added.)

Mr. Bernickus' deposition was taken on May 6, 1987. His testimony was consistent with the statement he made to Allstate in July 1985.

"Q. When you were discussing with Mr. Bick the topic of insurance did you tell him that you also owned the Capri?

A. Yes I did.

Q. Did you also tell him that you wanted it covered under the insurance that you were acquiring for the Cutlass?

A. I didn't come right out and tell him that I wanted it covered. I said it was being worked on, it wasn't even running, so would I have to pay on it even though it wasn't being driven, and *he told me no, but when it was running to give him a call to add it, like a new car or another car, onto the policy."* (Emphasis added.)

■ Our review of the record leads us to the conclusion that there is evidence which supports the defendants' theory of estoppel. Although Allstate points out an apparent inconsistent statement of Bernickus, it is not sufficient to justify summary judgment. It is not within the province of the trial court to weigh these conflicting statements.

Applying the principles of law governing summary judgment, we conclude that a disputed issue of material fact exists. Therefore, the trial court erred in granting summary judgment in favor of Allstate.

■■ ■ It is not necessary for us to consider Allstate's argument that the defendants, who are not parties to the insurance contract, cannot claim the benefit of estoppel. This issue was not raised in the trial court and, therefore, cannot be asserted on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872.) However, we note that this court has stated: "[L]iability insurance is no longer considered merely a private matter between an insured and an insurer. \*\*\* In this respect, we adopt the position that injured members of the general public are beneficiaries of liability insurance policies." *Reagor v. Travelers Insurance Co.* (1980), 92 Ill.

App. 3d 99, 102-03, 415 N.E.2d 512, *appeal denied* (1981), 85 Ill. 2d 561.

Accordingly, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.